RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHRISTOPHER TURNER,

               *Plaintiff-Appellant,*

    *v.*

CITY OF TAYLOR, CITY OF TAYLOR POLICE
DEPARTMENT, SERGEANT TAPP, LIEUTENANT
FRANCIS CANNING, LIEUTENANT MICHAEL
ZACHARY, LIEUTENANT R. CALDWELL, OFFICER
THOMAS YESTA, OFFICER ROSEANNE CRAPANZANO,
OFFICER P. O'CONNER, and POLICE OFFICERS JOHN
DOE I-VII,

               *Defendants-Appellees.*

No. 03-2636

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-73255—John Corbett O'Meara, District Judge.

Argued: April 27, 2005

Decided and Filed: June 15, 2005

Before: KEITH, CLAY, and FARRIS, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Hugh M. Davis, Jr., CONSTITUTIONAL LITIGATION ASSOCIATES, Detroit, Michigan, for Appellant. John H. Dise, Jr., DISE & ASSOCIATES, Southfield, Michigan, for Appellees. **ON BRIEF:** Cynthia Heenan, CONSTITUTIONAL LITIGATION ASSOCIATES, Detroit, Michigan, for Appellant. John H. Dise, Jr., Gina U. Puzzuoli, DISE & ASSOCIATES, Southfield, Michigan, for Appellees.

---

[*]The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

———————————

**OPINION**

———————————

CLAY, Circuit Judge. Plaintiff Christopher Turner appeals the district court's order denying his motion for summary judgment and granting Defendants' summary judgment motion as to his claims under 42 U.S.C. § 1983 that (a) he was unconstitutionally detained in the City of Taylor jail for four days without being presented to a magistrate for arraignment; (b) he was subject to excessive force and denied medical treatment during his incarceration; and (c) after his release from jail, the police unconstitutionally evicted him from his home. Plaintiff also appeals the district court's order affirming the magistrate judge's denial of his motion to reissue summons with respect to several proposed Defendants and to file a third amended complaint naming additional Defendants. For the reasons that follow, the district court's orders are **AFFIRMED, in part,** and **REVERSED, in part.**

**I.**
**BACKGROUND**

**A.      Substantive Facts**

Plaintiff Christopher Turner lived with his girlfriend Carolyn Wilson and their four children in Taylor, Michigan. According to a statement that Wilson provided to police, shortly after 1:00 a.m. on January 6, 2000, Plaintiff arrived home and began to argue with Wilson. During the argument, Plaintiff allegedly began knocking things over and then put a silver handgun to Wilson's head and threatened to kill her. Wilson called the Taylor Police Department, and officers arrested Plaintiff at his home for domestic violence/assault and battery. The officers later learned that the silver handgun was actually an inoperable BB gun.

After arriving at the police station, Plaintiff waited about a half an hour before being booked at approximately 2:00 a.m. As part of the booking process, Plaintiff was asked about his physical condition, and he indicated that he is HIV positive and an asthmatic, for which he uses an inhaler. Plaintiff also stated that he was currently suffering pain in his chest and right arm, and referred to having an ulcer on his right arm from an injury that he incurred prior to his arrest. Plaintiff was then placed in a cell.

At 3:38 p.m. on January 6, 2000, Detective Maureen Maher (a/k/a Maureen Brinker) prepared a Request for Warrant form and faxed it to the Wayne County Prosecutor's Office. The prosecutor's office did not respond until 8:27 a.m. on January 11, 2000, whereupon the prosecutor indicated that Plaintiff would be charged with the offense of "Domestic Violence - A & B." Despite the five day delay in hearing back from the prosecutor, Defendants claim that, after Plaintiff had been detained for 20 hours, it was determined on January 7 that Plaintiff would be charged with domestic violence, not felonious assault. Purportedly based on Plaintiff's imminent misdemeanor charge, Detective Maher set a one hundred dollar bond.

At noon on January 7, Plaintiff asked his jailers why he had not yet been arraigned and told them that he needed to be at work by 2:00 p.m. Plaintiff was told that he would be taken to court. By 2:00 p.m., Plaintiff still had not been processed, so he asked an officer if he could call his boss. The officer responded that he had called Plaintiff's employer, assuring Plaintiff that everything was okay. Plaintiff claims that he was not permitted to make any telephone calls during the entire period of his incarceration.

Plaintiff was moved to a different cell during the afternoon of January 7. In the process of the transfer, Plaintiff told the officers that he should not be put in the new cell without a blanket and

a mattress because he would get sick. In response, four officers – Crapanzano, Yesta, O'Connor, and Porta – hit him a total of ten times on the head and back; the officer described as "fat" struck Plaintiff repeatedly, and Porta kneed him in the back. One of the officers purportedly used a blunt object. According to Plaintiff, the blows caused him to drop to the floor in a fetal position, whereupon Officer Crapanzano kicked him in the head. Plaintiff was then picked up off the ground and thrown into his cell. Once in the cell, an officer struck his left and right arms and his back, causing bruises on his arms. Jail logs indicate that Lieutenant Francis Canning was the supervisor in charge of the jail at the time the alleged beating occurred.

Thereafter, paramedics were summoned for Plaintiff, who was complaining of shortness of breath due to an asthma attack, a headache, and chest pain caused by the shortness of breath. The paramedics treated Plaintiff with medicine and oxygen. A report completed by the paramedics indicates that Plaintiff was having difficulty breathing, but that Plaintiff "denie[d] any other problems." The report further indicated that, after Plaintiff's breathing was brought under control, Plaintiff said that he felt fine. The report also states, "PD [presumably Police Department] refused to let him go to hosp[ital] after being told he should." An Officer Volante signed the back of the report in acknowledgment of the refusal to let the paramedics take Plaintiff to a hospital.

Plaintiff alleges that at the 80th hour of his detention, which would have been during the morning of January 9, he complained to a heavyset officer about being held without arraignment beyond a 72-hour period. The officer agreed, and approached another officer sitting at the front desk (Plaintiff claims that the other officer was a lieutenant), presumably to ask him about this issue. According to Plaintiff, the lieutenant "just waved his hand." The heavyset officer returned to the area of Plaintiff's cell, hunched his shoulders, and told Plaintiff that he had tried.

At approximately 6:00 p.m. on Sunday, January 9, Officer A. Minard approached Plaintiff's cell and told him to get up because he was going to be arraigned. When Plaintiff exited his cell, he expressed skepticism that he was really going to be arraigned because he did not believe there would be a judge available on a Sunday evening. In response, Minard said, "What the fuck did I tell you?" and started spraying mace at Plaintiff. He then spun Plaintiff around, pushed his head into a steel post, grabbed Plaintiff again, and pushed his head into another steel post.[1] A few hours later, the paramedics were summoned a second time because Plaintiff was having symptoms of an asthma attack. Plaintiff alleges that this asthma attack was triggered by this second beating.

Some time that same night (Sunday, January 9), a female officer told Plaintiff that he could be released on a one hundred dollar bond. Plaintiff claims, however, that he was not permitted to make a telephone call in order to get the money. Further, Plaintiff testified that another inmate, referred to as the "Tire Man," had offered to pay Plaintiff's bond, but that the officers would not allow it. Plaintiff could not identify a specific officer at the jail whom he advised of the "Tire Man's" willingness to pay his bond; he did say, however, that he advised anybody who could hear him.

Plaintiff was released from jail at 8:00 a.m. on Monday, January 10. Once at his home, Officers Johnson and Matatall confronted Plaintiff and told him that he had two minutes to gather his personal effects and leave the house or else face arrest. Plaintiff allegedly called the Taylor Police Department from his home and asked to speak to a supervisor about being thrown out of his house. He spoke to a male lieutenant who told Plaintiff that he would go to jail if he stayed at his

---

[1] Plaintiff claims that an officer with "sergeant stripes" on his shirt allegedly witnessed Minard's beating. Plaintiff further claims that this officer was Sergeant Tapp, but the cited portion of the Joint Appendix – J.A. 947 – does not refer to Sergeant Tapp. Jail log records indicate that Sergeant Canning was the supervisor in charge of the police station at the time. (J.A. 810-11.). Plaintiff also provides a non-existent citation to the Joint Appendix, J.A. 990, for the proposition that Sergeant Tapp was the officer in charge. *See Pl's Br.* at 18.

house. Jail logs indicate that Lieutenant Canning was the supervisor in charge of the Police Department at the time.

On January 12, 2000, Plaintiff went to a medical facility and told the treating physician that he had been incarcerated for three days and had suffered a beating. Plaintiff complained of dizziness and contusions on various parts of his body, which are documented in the medical record of his visit.

Plaintiff subsequently complained to Police Chief Thomas Bonner about his treatment at the City of Taylor jail. Commander Jac Desrosiers responded via letter of April 25, 2000, that he had investigated Plaintiff's complaint, but found no evidence to support his claims.

## B.    Procedural History

On July 21, 2000, Plaintiff sued the City of Taylor Police Department and John Doe (a police officer of the City of Taylor), alleging four claims: (1) gross negligence under Michigan law; (2) cruel and unusual punishment under the Michigan and U.S. Constitutions; (3) violations of 42 U.S.C. § 1983 based on the City of Taylor's failure to train and supervise its officers regarding the provision of medical treatment for, and the prevention of unnecessary injuries to, individuals in custody; and (4) intentional infliction of emotional distress under Michigan law against Defendant John Doe for assaulting and battering Plaintiff.

On January 17, 2002, Plaintiff filed a First Amended Complaint, naming the City of Taylor, the City of Taylor Police Department, Sergeant Tapp, Lieutenant Canning, Lieutenant Zachary, and nine unnamed police officers (John Doe I through VIII and Jane Doe). The First Amended Complaint alleged eleven counts, including claims under 42 U.S.C. § 1983 for deliberate indifference to a known, serious medical condition; failing to train and supervise its officers regarding the provision of medical treatment and the prevention of unnecessary injuries to pre-trial detainees; failing to arraign him in a timely manner; and excessive force. Defendants City of Taylor, the Taylor Police Department, Canning, and Zachary filed their answer to the First Amended Complaint on February 20, 2002. On March 20, 2002, these same Defendants moved for summary judgment. Plaintiff also moved for summary judgment on counts two, four, nine, and ten of the First Amended Complaint.

The day before the hearing on the parties' summary judgment motions, Plaintiff filed a motion to compel discovery and a motion to file a second amended complaint. The court granted Plaintiff's motion to amend, but only because of "Plaintiff's counsel's assurances that the filing of a second amended [complaint] will name all of the individual defendants, allege only federal causes of action, and more specifically allege the constitutional violations upon which this suit is based." The court denied Plaintiff's motion to compel discovery based on defense counsel's representation that all requested discovery had been produced. The court further denied Defendants' December 18, 2001, summary judgment motion as moot and denied the parties' cross-motions for summary judgment without prejudice.

Plaintiff's Second Amended Complaint, filed on May 8, 2002, named as Defendants the City of Taylor, the City of Taylor Police Department, Sergeant Tapp, Lieutenant Canning, Lieutenant Michael Zachary, and Lieutenant R. Caldwell. It additionally named Officer Thomas Yesta, Officer Roseanne Crapanzano, Officer P. O'Connor, and Police Officers John Doe I through VII. The revised complaint set forth seven counts: (1) a claim against the City of Taylor Police Department under 42 U.S.C. § 1983 for failing to train and supervise its officers regarding the provision of medical treatment and the prevention of unnecessary injuries to pre-trial detainees; (2) a claim against all Defendants under 42 U.S.C. § 1983 for violations of his constitutional rights in being held beyond a 24-hour period without being arraigned; (3) a claim against all Defendants under 42 U.S.C. § 1983 for excessive force; (4) a claim against all Defendants under 42 U.S.C. § 1983 for retaliating

against Plaintiff for his complaints about his treatment and his continued detention without arraignment and without the ability to communicate with his attorney, his family, or his employer; (5) a claim against all Defendants under the U.S. Constitution for "extra judicial eviction," premised on the allegations that Defendants prevented him from returning to his home and constructively evicted him from his home without a judicial order; (6) a claim against all Defendants under 42 U.S.C. § 1983 for civil conspiracy; and (7) a claim against Defendants Tapp, Canning, Zachary, and John Doe VIII[2] for false imprisonment.

On December 31, 2002, Plaintiff moved to compel Defendants' responses to a request for production of documents, and on January 2, 2003, Plaintiff moved for leave to file the Third Amended Complaint. Both motions were referred to Magistrate Donald A. Scheer. Magistrate Judge Scheer denied leave to file the Third Amended Complaint on January 23, 2003, without prejudice, because Plaintiff's counsel had not completed sufficient discovery to file a comprehensive complaint. In the meantime, on January 13, 2003, Defendants City of Taylor, City of Taylor Police Department, Canning, Zachary, and Tapp moved for summary judgment on the Second Amended Complaint. On February 5, 2003, Magistrate Judge Scheer granted in part Plaintiff's motion to compel. Magistrate Judge Scheer also denied Plaintiff's motion to file the Third Amended Complaint, without prejudice, pending Defendants' production of discovery materials.

On February 25, 2003, Plaintiff filed a motion to re-issue the summonses for Defendants Caldwell, Yesta, Crapanzano, and O'Connor, who had not been served within 120 days of the filing of the Second Amended Complaint. The district court referred the motion to re-issue summons to Magistrate Judge Scheer, who denied the motion without a statement of reasons on April 29, 2004. The district judge affirmed that order on November 10, 2003.

On April 11, 2003, Plaintiff renewed his motion to file the Third Amended Complaint, which was referred to Magistrate Judge Scheer. Plaintiff further argued that, based on the photographs and the daily activity logs that the court had ordered Defendants to produce, he was now in a position to identify several of the John Doe Defendants. Plaintiff also moved to add as Defendants Police Chief Thomas Bonner, Commander Jac Desrosiers, and Detective Brinker (a/k/a Maher). Magistrate Judge Scheer denied Plaintiff's motion to amend on May 19, 2003, which the district judge affirmed on November 10, 2003.

On May 22, 2003, Plaintiff renewed his motion for summary judgment. He argued that he was entitled to summary judgment on his claims that (1) he was illegally held for over four days without being afforded a probable cause hearing, an arraignment, or the opportunity to post bond and (2) he was subjected to an illegal bond condition effectively evicting Plaintiff from his home. On November 10, 2003, the district court denied Plaintiff's motion for summary judgment and granted Defendants' January 13, 2003, motion for summary judgment. The court held that Plaintiff's motion was untimely because the scheduling order required dispositive motions to be filed no later than January 15, 2003. The court also denied the motion on the merits on the ground that Plaintiff had produced no evidence that any policy or custom of the City of Taylor caused the alleged violations of his constitutional rights. As to the individual Defendants Canning, Zachary and Tapp, the court held that Plaintiff had not submitted evidence that a supervisory official had authorized, approved or knowingly acquiesced in the unconstitutional conduct of an offending subordinate, to wit, being held in jail for over 72 hours and being evicted from his home.

Plaintiff moved for reconsideration of the court's November 10, 2003, order, which the court denied. Plaintiff then timely appealed (1) the district judge's order of November 10, 2003, affirming Magistrate Judge Scheer's denial of his motion to reissue summons and to file the Third Amended

---

[2]The Second Amended Complaint provides no other description of John Doe VIII.

complaint; (2) the order of November 10, 2003, denying Plaintiff's motion for summary judgment and granting Defendants' summary judgment motion; and (3) the December 2, 2003, order of the district court denying Plaintiff's motion for reconsideration.

## II.
## CLAIM FOR UNLAWFUL DETENTION AGAINST DEFENDANTS TAPP, CANNING, AND ZACHARY

### A.        Standard of Review

The Court reviews a district court's summary judgment ruling *de novo. Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006, 1009 (6th Cir. 1997). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All evidence must be viewed in the light most favorable to the nonmoving party. *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). However, "[t]he moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

### B.        Analysis

Plaintiff was arrested at 1:00 a.m. on Thursday, January 6, 2000, on suspicion of domestic violence and felonious assault, booked at the City of Taylor Police Department a few hours later, and held there until his release at 8:00 a.m. on Monday, January 10, 2000. At no point during his one hundred hour stay at the City of Taylor jail was Plaintiff brought before a magistrate for an arraignment. Moreover, although jail logs indicate that Detective Maureen Maher had set a $100 bond on Friday, January 7, 2000, Plaintiff claims that he was never advised of this fact until Sunday, January 9, 2000. Plaintiff further claims that he was not permitted to make a telephone call to secure the money for the bond, nor was he permitted to take advantage of an offer from another inmate (the "Tire Man") to pay his bond.

#### 1.        Relevance of the Purported Availability of a Cash Bond

The City of Taylor jail log for January 6, 2000 indicates that the police had arrested Plaintiff on suspicion of domestic violence and felonious assault. Felonious assault is prohibited by MICH. COMP. LAWS § 750.82(1) ("[A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both."). Domestic violence could refer to the misdemeanor offense set forth at MICH. COMP. LAWS § 750.81(2) ("… [A]n individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both."). Domestic violence might also refer to the offenses of "Domestic Assault" or "Domestic Assault and Battery," as proscribed, respectively, by City of Taylor Ordinances No. 94-271 and 94-272. *See* J.A. 171 (prohibiting assault of a spouse, an individual with whom he has a child in common, or a resident of his household); J.A. 173 (prohibiting assault and battery upon a spouse, an individual with whom he has a child in common, or a resident of his household).

Unlike with most other misdemeanor offenses,[3] police officers in Michigan are not permitted to set a cash bond for individuals arrested on suspicion of domestic violence assault and battery; only a magistrate may set bond. *See* MICH. COMP. LAWS § 780.582a(1)(a) ( "A person shall not be released on an interim [cash] bond …, but shall be held until he or she can be arraigned or have interim bond set by a judge or district court magistrate if" the person was arrested without a warrant pursuant to MICH. COMP. LAWS § 764.15a "or a local ordinance substantially corresponding to that section"); *id.* § 764.15a (providing that a peace officer may conduct a warrantless arrest of an individual for violating MICH. COMP. LAWS § 750.81 [prohibiting domestic violence assault and battery] if the officer has reasonable cause to believe that a violation occurred and the individual had a child in common with the victim, resides in the same household as the victim, has or has had a dating relationship with the victim, or is a spouse or former spouse of the victim). Accordingly, it is irrelevant that Plaintiff allegedly was told during his four-day stay at the jail that the Taylor police had set a $100 cash bond for him and afforded him the opportunity to post that bond. Under Michigan law, the Taylor police could not have released Plaintiff without first presenting him to a magistrate, who then could set an interim bond. The relevant question with regard to Plaintiff's claim of unlawful detention is whether his four-day stay at the Taylor jail without being arraigned was unconstitutional and, if so, who bears responsibility.

## 2.        The City of Taylor's Potential Liability

As an initial matter, we note that Plaintiff has not challenged the district court's grant of summary judgment for the City of Taylor on his claim for unconstitutional detention. Accordingly, he has waived this issue on appeal. *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (holding that issues not fully developed and argued were waived on appeal).

In any event, there would be no basis to impose liability against the City under 42 U.S.C. § 1983. "Despite being 'persons' for the purposes of § 1983, municipalities are not 'liable for every misdeed of their employees and agents.'" *Alkire v. Irving*, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir. 1993)). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Thus, for Plaintiff to hold the City of Taylor liable, "he must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire*, 330 F.3d at 815 (citing *Garner,* 8 F.3d at 364).

The City of Taylor has an official policy of holding domestic violence arrestees for a minimum period of 20 hours unless arraigned and released by the court. *See* J.A. 165 (*Taylor Police Dep't Addendum to Policy & Procedure on Stops & Arrests Re: Domestic Violence* § II.B.4.f) ("An

---

[3] In general, under Michigan law, "[i]f a person is arrested without a warrant for a misdemeanor or a violation of a city, village, or township ordinance, and the misdemeanor or violation is punishable by imprisonment for not more than 1 year, or by a fine, or both, the officer making the arrest shall take, without unnecessary delay, the person arrested before the most convenient magistrate of the county in which the offense was committed to answer to the complaint." MICH. COMP. LAWS § 780.581(1). Except in certain misdemeanor cases, "if a magistrate is not available or immediate trial cannot be had, the person arrested may deposit with the arresting officer or the direct supervisor of the arresting officer or department, or with the sheriff or a deputy in charge of the county jail if the person arrested is lodged in the county jail, an interim bond to guarantee his or her appearance. The bond shall be a sum of money, as determined by the officer who accepts the bond, not to exceed the amount of the maximum possible fine but not less than 20% of the amount of the minimum possible fine that may be imposed for the offense for which the person was arrested." *Id.* § 780.581(2). The City of Taylor Police Department also has a policy that permits the supervisor-in-charge or an officer with the rank of at least Lieutenant to allow a person arrested for a misdemeanor violation to be released on bond prior to arraignment. *See* J.A. 175.

offender *must* be detained for 20 hours unless arraigned and released by the court.  He or she *cannot* post an interim bond during that time.") (emphasis in original).  Plaintiff does not contend this policy is unconstitutional, nor could he, because the policy does not *prohibit* arraignment within the first 20 hours if a magistrate is available.  *Cf. Davis v. City of Detroit*, No. 98-1254, 1999 WL 1111482, *1 (6th Cir. Nov. 24, 1999) (unpublished) (holding that the plaintiff should have been allowed to proceed with his action to develop his claim that defendants employed a policy of holding domestic violence arrestees for a minimum period of twenty hours even if a magistrate was available to conduct a probable cause hearing earlier).  Moreover, Plaintiff has failed to point to any other policy or custom of the City that was the motivating force behind his allegedly unconstitutional detention.  To the contrary, he argues that the supervisory Defendants (Tapp, Canning, and Zachary) violated written policies of the City of Taylor governing how long prisoners can be held without arraignment. *See* J.A. 166 (*Taylor Police Dep't Policy on Stops & Arrests Re: Domestic Violence* § II.B.4.h ("If the offender cannot be arraigned or brought to trial within 24 hours of arrest and has been detained for 20 hours, an interim bond may then be posted pending arraignment.").[4]  Summary judgment for the City of Taylor therefore was appropriate.

### 3.          Liability of the Supervisory Defendants

Because Plaintiff seeks to hold Defendants Tapp, Canning, and Zachary ("the supervisory Defendants") liable in their individual capacities under 42 U.S.C. § 1983, he "must show not only that the officers' actions were unconstitutional, but also that they should have known at that time that they were violating [his] rights." *Stemler v. City of Florence*, 126 F.3d 856, 866 (6th Cir. 1997). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In determining whether the officers should have known… that their actions were unlawful, we look primarily to decisions of the Supreme Court, this court, and other courts within our circuit." *Stemler*, 126 F.3d at 866 (citing *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992)).

"Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (citations omitted). "To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Id.* at 112.  Although the Constitution does not require a pre-arrest determination of probable cause (*i.e.*, warrantless arrests are permissible), *id.* at 113, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest," *id.* at 114; *see also id.* (noting "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships.") (citations omitted).

For individuals arrested without a warrant, the probable cause determination "must be made by a judicial officer …promptly after arrest." *Id.* at 125 (footnotes omitted).  Although judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of the Fourth Amendment, even a hearing provided less than 48 hours after arrest may nonetheless violate the Fourth Amendment "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably.  Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *County of Riverside v.*

---

[4]This policy does not indicate whether the police can set the bond or whether the bond must be set by a magistrate.  As discussed above, with regard to persons charged with domestic violence assault and battery, the bond must be set by a magistrate.  MICH. COMP. LAWS § 780.582a(1)(a).

*McLaughlin*, 500 U.S. 44, 56-57 (1991). If the probable cause hearing is provided more than 48 hours after arrest, "the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57.

There is no question that, if Plaintiff's version of events is accepted as true, he was denied his constitutional right to a prompt judicial determination of probable cause following his arrest. He was detained for approximately 100 hours without being presented to a magistrate. After four days, he was simply released without being charged. Defendants have proffered no justification for Plaintiff's detention for such a long period of time and, therefore, it must be presumed that Plaintiff's confinement in the City of Taylor jail was unreasonable and unconstitutional. The next question is whether the supervisory Defendants knew that they were violating Plaintiff's clearly established constitutional right to a prompt presentation to a magistrate.

To hold the supervisory Defendants liable for his unconstitutional detention, Plaintiff relies primarily on the police department's jail logs, which purport to identify the officers who were in charge of the jail at the time of Plaintiff's incarceration. *See* J.A. 808-12. Plaintiff also points to Lieutenant Canning's testimony that (1) supervisory officers are responsible for administering the Taylor Police Department policies; (2) there are policies governing the care and custody of prisoners, as well as how long a prisoner who has been arrested but not arraigned can be held in the City of Taylor's jail; (3) officers are supposed to know those policies; and (4) if officers violate the policy regarding a prisoner's confinement without arraignment, the supervisory officer in charge is obligated to rectify the situation. *See* J.A. 951-54; *see also* J.A. 177 (*Taylor Police Dep't Policy on Prisoner Processing*, § II.B.e) ("The supervisor-in-charge of the station shall be responsible for the proper care and treatment of prisoners while they are in the station, and for making sure that all policies and procedures concerning prisoner processing are followed."). From this evidence, Plaintiff argues that a reasonable jury could infer that shift supervisors Tapp, Canning, and Zachary were aware that Plaintiff was being held too long without being arraigned.

The only evidence related to Sergeant Tapp is the appearance of his name on the jail log for January 6, 2000, which was the first day of Plaintiff's incarceration. Assuming that he was in control of the jail on that day, Sergeant Tapp could be liable for detaining Plaintiff for even as little as 20 hours if a magistrate was available to arraign him. *See Davis v. City of Detroit, supra*. Plaintiff argues that he easily could have been brought before a magistrate for an arraignment during normal court hours on Thursday, January 6 or Friday, January 7, and, indeed, the jail logs for those days show that at least ten other inmates were arraigned on those days.[5] Plaintiff therefore has created a genuine issue of material fact that Sergeant Tapp had the responsibility to ensure that Plaintiff was arraigned within the first twenty hours of his incarceration and that Tapp, as a supervisor-in-charge, knew that Plaintiff had been detained for an extended period of time without being presented to a magistrate.

The jail logs list Lieutenant Canning as a supervisor at the jail for all four days of Plaintiff's incarceration, and Lieutenant Zachary is listed as the "O.I.C." (presumably the officer-in -charge) for January 10, 2000, the final day of Plaintiff's incarceration. Lieutenant Zachary could be held liable for the length of Plaintiff's detention without arraignment because police department policy charged him with knowledge of the information contained on the January 10 jail log, which reflected that Plaintiff had been arrested on January 6, 2000, but as of January 10, 2000, still had not been arraigned. *See* J.A. 177-78 (*Taylor Police Dep't Policy on Prisoner Processing*, § II.B.1.g) ("It shall

---

[5]*Pl's Br.* at 28 (citing J.A. 808-09.) Although Plaintiff fails to indicate which portion of the jail logs prove that ten other inmates were arraigned on these days, we presume that the notations of the letter "y" (apparently an abbreviation of "yes") under the heading "AR" (an abbreviation of "arraigned") identifies those inmates who had been arraigned. Defendants do not contest Plaintiff's description of this evidence.

be the responsibility of the supervisor-in-charge and the jailer, at the beginning of each shift, to review entries from previous shifts for prisoners currently being held."). Accordingly, there remains a genuine issue of material fact as to whether Lieutenant Zachary should have arranged for Plaintiff's arraignment or immediate release on January 10, 2000.

Likewise, there is a genuine issue of material fact as to whether Lieutenant Canning was responsible for Plaintiff's detention without being presented to a magistrate. Canning is listed as a supervisor on the jail logs for all four days of Plaintiff's incarceration. Insofar as Canning was actually present on all of these days, he was responsible for prisoner processing and chargeable with knowledge of the information concerning Plaintiff on the jail logs, which reflect the length of Plaintiff's detention without arraignment.

## III.
## CLAIM FOR EXCESSIVE FORCE AGAINST
## DEFENDANTS TAPP, CANNING, AND ZACHARY

### A.    Standard of Review

The Court reviews a district court's summary judgment ruling *de novo*. *Parker,* 121 F.3d at 1009.

### B.    Analysis

Plaintiff alleges that he received two beatings while incarcerated at the City of Taylor Jail. First, he claims that on January 7, 2000, Officers Crapanzano, Yesta, O'Connor, and Porta struck him approximately ten times and kicked him in the head. Second, he alleges that Officer Minard sprayed mace in his face and beat him on another day, while another officer, who allegedly was a supervisor, stood by with his arms folded. Plaintiff, however, does not set forth any facts showing that Defendants Tapp, Canning, or Zachary directly participated in these two beatings. Rather, Plaintiff seeks to hold these Defendants liable based on the fact that they were acting as supervisors at various times during his four-day incarceration. For the reasons discussed below, we hold that the district court properly granted the supervisory Defendants' summary judgment motion.

This Court has explained the standards for supervisory liability under § 1983 as follows:

> [T]he § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982)); *see also Mills v. City of Barbourville*, 389 F.3d 568, 580 (6th Cir. 2004) ("In order to establish liability pursuant to § 1983, the plaintiff must prove that the defendant, as a supervisory official, is *personally* responsible for the alleged unconstitutional actions that caused his injury….At a minimum, the plaintiff must demonstrate that a supervisory official condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct.") (emphasis added in *Mills*; citing *Bellamy*, 729 F.2d at 421); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (holding that § 1983 plaintiff must prove that officer "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.…Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act…and

cannot be based upon simple negligence.") (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)).

There is little question that the supervisory Defendants were responsible for Plaintiff's well-being while incarcerated at the City of Taylor jail. The City of Taylor has a written policy which provides:

> The supervisor-in-charge of the station shall be responsible for the proper care and treatment of prisoners while they are in the station, and for making sure that all policies and procedures concerning prisoner processing are followed.

(J.A. 177.) (*Taylor Police Department Policy on Prisoner Processing* § II.B.1.e). But imposing liability on the supervisory Defendants based solely on this policy would be tantamount to the imposition of *respondeat superior* liability for the unlawful beatings inflicted by subordinates. Moreover, there is no evidence whatsoever that any of the supervisory Defendants either participated in the beatings or knew about them at any time. Although Plaintiff alleges that an officer with "sergeant stripes" on his shirt witnessed, and allegedly condoned, one of the beatings, Plaintiff has not submitted any competent evidence that identifies this individual as one of the supervisory Defendants. Because there is no evidence that a supervisory official implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the officers who allegedly beat Plaintiff, the district court properly granted Defendants' summary judgment motion.

## IV.
## CLAIM FOR EXTRA-JUDICIAL EVICTION
## AGAINST DEFENDANT CANNING

### A.    Standard of Review

The Court reviews a district court's summary judgment ruling *de novo*. *Parker,* 121 F.3d at 1009.

### B.    Analysis

Plaintiff was never arraigned on charges for domestic violence assault and battery. Plaintiff was simply released from the City of Taylor jail on January 10, 2000. Upon arriving home, two Taylor police officers ordered him to leave his home or else face arrest. Plaintiff argues that the order to vacate his home was an "extrajudicial eviction" that amounted to Defendants' imposition of an illegal bond condition on his release from jail, violating his right to due process and his constitutional right to live at home with his family.

As discussed in Section II.B.1, above, Michigan law would not have permitted Defendants to release Plaintiff from jail upon his posting of a cash bond because he was facing a charge of domestic violence assault and battery, and only a magistrate has the authority to set bond in such cases. But even assuming that the Taylor police could have released Plaintiff on a cash bond, they did not have the authority under Michigan law to impose additional bond conditions, such as a requirement that he stay away from the victim's home. *See People v. Williams*, 493 N.W.2d 277, 278 (Mich. Ct. App. 1992) (holding that Michigan law does not grant the police the authority to impose conditions for release for an individual accused of a misdemeanor, other than the authority to release an individual upon payment of an interim cash bond in non-assault and battery cases).

In any event, the essence of Plaintiff's extrajudicial eviction claim is not that Lieutenant Canning imposed an illegal bond condition upon his release from jail, because Plaintiff was not released on bond at all. He was simply permitted to leave the City of Taylor jail without ever having been presented to a magistrate for arraignment. Thus, if Plaintiff's allegations are believed, Canning

ordered Plaintiff to leave his house under threat of arrest, even though there had been no judicial finding of probable cause that he had committed the domestic violence offense which led to his four-day imprisonment, he had not been charged with any criminal offense, and there was no probable cause to believe that Plaintiff had committed or was threatening to commit any other offense that justified removal from his home. Such police action arguably was an unconstitutional seizure in violation of the Fourth Amendment[6] and a denial of procedural due process in violation of the Fourteenth Amendment.[7]

The question then becomes whether Plaintiff proffered sufficient evidence to link Lieutenant Canning to the unconstitutional eviction. After being ordered to vacate his home, Plaintiff allegedly called the Taylor Police Department and asked to speak to a supervisor. He claims he spoke with a male lieutenant who told Plaintiff that he would go to jail if he stayed at his house. Jail logs indicate that Lieutenant Canning was the supervisor in charge of the Police Department at the time. Without any citation to supporting evidence, Defendants argue that more than one lieutenant was on duty that day, as well as several sergeants, all of whom are supervisors. *Def's Br.* at 25. Accordingly, the only evidence in the record indicates that Plaintiff could have spoken with Lieutenant Canning, raising a genuine issue of material fact that Lieutenant Canning ordered or authorized Plaintiff's eviction from his home.

## V.
## MEDICAL TREATMENT CLAIM
## AGAINST DEFENDANT CANNING

### A.     Standard of Review

The Court reviews a district court's summary judgment ruling *de novo. Parker,* 121 F.3d at 1009.

### B.     Analysis

Plaintiff alleges that he was beaten on two occasions while incarcerated at the City of Taylor jail. After the beating on January 7, 2000, paramedics were summoned for Plaintiff, who was complaining of asthma-related symptoms. A report completed by the paramedics indicates that Plaintiff said he felt fine after his breathing was brought under control. The report also states, "PD [presumably Police Department] refused to let him go to hosp[ital] after being told he should." An Officer Volante signed the back of the report in acknowledgment of the refusal to let the paramedics take Plaintiff to a hospital. Plaintiff alleges that this incident proves that Lieutenant Canning was deliberately indifferent to his medical needs.

---

[6]U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"); *cf. Hayes v. Florida,*470 U.S. 811, 816 (1985) ("And our view continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, at least where not under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause.").

[7]U.S. CONST. amend. XIV ("No state shall… deprive any person of life, liberty, or property, without due process of law[.]"); *see also Fuentes v. Shevin,* 407 U.S. 67, 80-81 (1972) (holding that procedural due process requires notice and an opportunity to be heard before the government deprives an individual of his possessions); *Flatford v. City of Monroe*, 17 F.3d 162, 167 (6th Cir. 1994) (holding that there is a clearly established due process right to a pre-eviction hearing in the absence of exigent circumstances).

The problem with Plaintiff's deliberate indifference claim against Lieutenant Canning, as with his excessive force claim, is that he has produced no evidence that Lieutenant Canning "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct," *Bellamy*, 729 F.2d at 421, of the officers who purportedly were deliberately indifferent to Plaintiff's serious medical need. The only evidence Plaintiff cites is (1) the jail log for January 7, 2000, which purports to indicate that Lieutenant Canning was the officer in charge of the jail; (2) a written policy of the City of Taylor Police Department that makes the officer in charge responsible for the care and treatment of prisoners in custody; and (3) a written policy of the City of Taylor Police Department which gives the officer in charge the discretion to determine whether to send a prisoner to the hospital. *See* J.A. 809 (jail log); J.A. 177 (*Taylor Police Department Policy on Prisoner Processing* § II.B.1.e); J.A. 201 (*Taylor Police Department Policy on Prisoner Processing* § II.F.5). The latter policy states that "the supervisor-in-charge should not hesitate to send the prisoner to the hospital if there is any question at all. It is better to let a trained physician examine the prisoner when a question exists whether immediate medical treatment is actually needed, than to make the wrong decision." (J.A. 201.) There is no evidence, however, that Lieutenant Canning participated either directly or indirectly in the particular decision to not send Plaintiff to the hospital, apparently against the recommendation of the paramedic. Plaintiff seeks to impose liability on Lieutenant Canning solely by virtue of his supervisor status, which is not permitted under § 1983. *Bellamy*, 729 F.2d at 421. Accordingly, the district court correctly granted Defendant's motion for summary judgment as to the liability of Lieutenant Canning.

Further, a constitutional claim for denial of medical care has an objective component that requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Plaintiff, however, never explains what serious medical need that the police put in jeopardy by virtue of their refusal to let him go to the hospital. The paramedic's report states that, after Plaintiff's breathing was brought under control, Plaintiff said that he felt fine. There simply is no evidence from which to infer that Plaintiff was faced with a substantial risk of serious medical harm. Plaintiff presented no testimony from the paramedic regarding the recommendation that he be taken to a hospital, and Plaintiff has not claimed what medical need, if any, would have been satisfied had he been transported to a hospital. Accordingly, Plaintiff's medical need claim fails on the merits.

## VI.
## MOTION FOR LEAVE TO FILE A
## THIRD AMENDED COMPLAINT

### A.    Standard of Review

"Except in cases where the district court bases its decision on the legal conclusion that an amended complaint could not withstand a motion to dismiss, [this Court] review[s] a district court's denial of leave to amend for abuse of discretion." *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002) (citing *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1188 (6th Cir. 1996)).

### B.    Analysis

After a responsive pleading has been filed to a complaint, Federal Rule of Civil Procedure 15(a) provides that a party may file an amended complaint "only by leave of court or by written consent of the adverse party." FED. R. CIV. P. 15(a). Rule 15(a) provides that such "leave shall be freely given when justice so requires." *Id.* Rule 15 "reinforce [s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings,'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)), and therefore assumes "a liberal policy of permitting amendments." *Ellison v. Ford Motor Co.*, 847 F.2d

297, 300 (6th Cir. 1988). Based on the sequence of events in this case, the magistrate judge should have granted Plaintiff leave to file his Third Amended Complaint, except to the extent he sought leave to name Police Chief Bonner and Commander Desrosiers as defendants.

On December 31, 2002, Plaintiff moved to compel Defendants' responses to a request for production of documents. Plaintiff's request had sought copies of the daily activity logs for all patrol officers on the morning shift for January 9 through January 11, 2000; copies of all citizen complaints filed against the Taylor Police Department in 1999; copies of all citizen complaints against Taylor officers in 2000 and 2001; and a schematic diagram of the jail where Plaintiff had been confined. On January 2, 2003, Plaintiff moved for leave to file the Third Amended Complaint. Both motions were referred to Magistrate Donald A. Scheer.

On February 5, 2003, Magistrate Judge Scheer granted in part Plaintiff's motion to compel. Defendants were ordered to produce or make available for inspection, *inter alia*, contact information for all inmates in the Taylor jail at the time that Plaintiff was incarcerated; photographs of jail officers who worked at the jail at the time of Plaintiff's incarceration; the entire Detective Bureau file concerning Plaintiff; and the daily activity logs for all police department officers and vehicles on January 10, 2000, the date that Plaintiff was released from jail. Magistrate Judge Scheer also denied Plaintiff's motion to file the Third Amended Complaint, without prejudice, pending Defendants' production of these discovery materials.

On April 11, 2003, Plaintiff renewed his motion to file the Third Amended Complaint. Plaintiff argued that, based on the photographs and the daily activity logs that the court had ordered Defendants to produce, he was in a position to identify several of the John Doe Defendants: (1) John Doe III from the First Amended Complaint (John Doe I from the Second Amended Complaint) was police cadet S. Porta; (2) John Doe IV from the First Amended Complaint (John Doe II from the Second Amended Complaint) was police cadet A. Minard; and (3) John Doe VI and VII from the First Amended Complaint (John Does V and VI from the Second Amended Complaint) were actually three people: Corporal Rory John Johnson, Corporal Lawrence Matatall, and Corporal Ernie Gayer.

Plaintiff also moved to add as Defendants Police Chief Thomas Bonner, Commander Jac Desroisers, and Detective Brinker (a/k/a Maher). Plaintiff argued that Chief Bonner was responsible for setting and enforcing allegedly unconstitutional policies and practices. Plaintiff argued that Commander Desrosiers was responsible for investigating the citizen's complaint that Plaintiff filed after his release, and that Desrosiers failed to conduct an adequate investigation and improperly concluded that Plaintiff had suffered no wrongdoing. Plaintiff further argued that Detective Maher is John Doe VIII from the First Amended Complaint (John Doe VII in the Second Amended Complaint) who ordered Defendants, Tapp, Canning, Caldwell, and Zachary to not arraign, release, or allow Plaintiff a telephone call or provide him with medical attention, and to impose illegal bond conditions after Plaintiff's release from custody. Plaintiff further clarified that the defendant previously identified as P. O'Conner is actually Officer Keith O'Conner (John Doe II from the First Amended Complaint). Plaintiff claimed that Keith O'Conner "clearly had notice that he would be named as a Defendant in this case since he was present at the deposition where he was identified."

Magistrate Judge Scheer denied Plaintiff's motion to amend on May 19, 2003. Magistrate Judge Scheer, reasoning that "the plaintiff's long delay and multiple efforts to amend his Complaint result primarily from his own failure to pursue discovery and formulate his claim." The court cited to the fact that multiple dispositive motions had been filed in the case, "only to be swept away by tardy discovery motions and requests for amendment of the complaint." The court held that Plaintiff had not shown that justice required leave to amend the complaint because "[n]early three years of pleading and discovery should have been more than sufficient to frame the issues of this case." The district judge affirmed this order on November 10, 2003, finding that "[e]ach round of discovery

prompted [Plaintiff] to add, or attempt to add, allegations and/or defendants in successively amended complaints" and characterizing Plaintiff's action "as a kind of rolling attack on Defendants."

Like Plaintiff, we are puzzled as to why the magistrate judge denied Plaintiff leave to amend. The magistrate judge initially denied Plaintiff's motion to amend without prejudice, pending Defendants' production of relevant evidence, noting in open court that "additional discovery may require additional amendment." The magistrate judge's written order echoed his statement at oral argument that Plaintiff "may re-file the Motion [for leave to file the Third Amendmed complaint] when [Plaintiff's counsel] are satisfied that [they] have the identities of the defendants and all other pertinent information." The magistrate judge utterly ignored this procedural history when he denied Plaintiff's renewed motion to amend on the ground that Plaintiff had not been diligent in pursuing discovery and formulating his claims. This holding is inconsistent with the magistrate judge's prior order permitting discovery so that Plaintiff would have an evidentiary basis upon which to premise his motion to amend. Defendants' contention that Plaintiff already had information identifying the additional Defendants is not supported by the record. Plaintiff did not have access to photographic evidence of these additional Defendants until after the court granted his motion to compel. Accordingly, Plaintiff's motion for leave to amend was timely. Under these circumstances, the magistrate judge abused his discretion in denying leave to amend.

The magistrate judge provided no other basis for denying Plaintiff's motion. The magistrate judge did not hold that amendment would have been futile or would have prejudiced the parties that Plaintiff sought to name. Both proposed Defendants Porta and Minard were involved in alleged beatings of Plaintiff at the jail and allegedly knew how long Plaintiff had been confined without being presented to a magistrate. If Plaintiff's allegations are assumed to be true, then these individuals violated his constitutional rights. Likewise, proposed Defendants Johnson and Matatall, operating under the orders of Defendant Gayer, were involved in the unconstitutional eviction of Plaintiff from his home following his release from jail. Defendants have not argued that permitting Plaintiff leave to amend would have prejudiced these proposed Defendants. Finally, Plaintiff should have been granted leave to amend to name Detective Maher because the evidence suggests that she was involved in setting a no-victim-contact bond condition on Plaintiff's release from jail, even though (a) the police have no authority to impose such conditions and (b) no magistrate ever imposed such a condition on Plaintiff's release. As a result of the purported bond condition, Plaintiff was ordered to vacate his residence. If these allegations are proved true, Plaintiff will have demonstrated a constitutional violation.

It does appear, however, that it would have been futile for Plaintiff to amend his complaint to name Police Chief Bonner. Plaintiff's sole allegation against Bonner is that he was responsible for setting and enforcing the policies and practices of the police department and the jail and that his failure to enforce the policies was the cause of the constitutional violations that Plaintiff suffered. Plaintiff clearly knew that Bonner was the Police Chief at the outset of this litigation and never explains why Bonner was not named at that point. Moreover, because Plaintiff does not allege that Bonner participated either directly or indirectly in the constitutional violations, Plaintiff's theory of liability against Bonner appears to be one of *respondeat superior*, which is not cognizable.

Plaintiff's allegation against Commander Desrosiers related to the investigation of Plaintiff's complaint about his treatment is premised on the allegation that Desrosiers conducted an inadequate investigation and reached the wrong conclusion. Plaintiff's claim may sound in negligence, but is not a constitutional tort. *Bass v. Robinson*, 167 F.3d at 1048 ("Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act…and cannot be based upon simple negligence.") (citation omitted). Accordingly, amendment for the purpose of naming Desrosiers would have been futile.

## VII.
## MOTION TO RE-ISSUE SUMMONSES FOR DEFENDANTS
## YESTA, CRAPANZANO, CALDWELL, AND O'CONNOR

**A.        Standard of Review**

"A district court's determination with respect to excusable neglect is subject to review under an 'abuse of discretion' standard." *Allen v. Murph*, 194 F.3d 722, 723 -24 (6th Cir. 1999) (citations omitted).

**B.        Analysis**

On February 25, 2003, Plaintiff filed a motion to re-issue the summonses for Defendants Caldwell, Yesta, Crapanzano, and O'Connor. Plaintiff argued that the court previously had granted him leave to file a Second Amended Complaint naming Defendants Caldwell, Yesta, Crapanzano, and O'Connor and that he had served that complaint on defense counsel on May 8, 2002, but did not obtain a summons and effect service upon these new Defendants. Plaintiff argued that he "mistakenly relied on defense counsel's prior practice of accepting service on behalf of new Defendants who were currently employed by Defendant Taylor Police Department." (Defense counsel previously had accepted service of the First Amended Complaint for Defendants Canning and Zachary, who were current employees, but refused to accept for Defendant Tapp, who was retired). Plaintiff further argued that these Defendants "must have had notice of their inclusion in the lawsuit" by virtue of the investigations conducted by the original named Defendants and their counsel prior to answering the complaint. Plaintiff further pointed out that Defendants Yesta, Crapanzano, O'Connor, and either Caldwell or Canning were present at Plaintiff's deposition on March 12, 2002, and therefore purportedly had knowledge of the lawsuit and their potential liability. Plaintiff further argued that Defendant Crapanzano appeared for her deposition in response to a deposition notice (not a subpoena) served on defense counsel, as if she were a party; likewise, the depositions of the other Defendants were scheduled through defense counsel. According to Plaintiff, these additional Defendants would not be prejudiced because they likely would be represented by the same counsel who represents the other Defendants, these Defendants would not have to take additional discovery, and Plaintiff did not seek to add any additional claims.

The district court referred the motion to re-issue summons to Magistrate Judge Scheer, who denied the motion without a statement of reasons on April 29, 2004. The district judge affirmed that order on November 10, 2003. We now affirm.

Rule 4(m) of the Federal Rules of Civil Procedure governs the timing for service of the summons and complaint. It provides, in relevant part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Because Plaintiff moved to reissue the summonses for Defendants Yesta, Crapanzano, Caldwell, and O'Connor more than 120 days after the filing of his complaint, he must show that his failure to act was the result of excusable neglect. *See* FED. R. CIV. P. 6(b) ("When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion

…upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]").

"[T]he excusable neglect standard has consistently been held to be strict, and can be met only in extraordinary cases." *Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989) (internal quotation omitted) (interpreting "excusable neglect" in the context of Federal Rule of Appellate Procedure 4(a)(5)).
The movant first must demonstrate that his failure to meet the deadline was a case of neglect. Neglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388, (1993); *id.* at 391, 395 (defining excusable neglect as used in FED. R. BANKR. P. 9006(b)(1) and noting it was patterned after FED. R. CIV. P. 6(b)). Second, the movant must establish that the failure to act was excusable. "The determination of whether a case of neglect was excusable
is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the [non-moving party], the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

Plaintiff has not demonstrated that the magistrate judge abused his discretion in failing to find excusable neglect for Plaintiff's failure to serve the additional Defendants in a timely manner. Plaintiff points out that defense counsel had accepted service of the First Amended Complaint for Defendants Canning and Zachary, who were current employees, but refused to accept for Defendant Tapp, who was retired. Based on this one-time action, Plaintiff assumed that defense counsel's practice was to accept service of all future amended complaints on behalf of employees currently employed by the City of Taylor Police Department. After he filed his Second Amended Complaint and served defense counsel, Plaintiff never confirmed orally or in writing that defense counsel had accepted service on behalf of the newly named Defendants.

Plaintiff's conduct was inexcusable. The 120 day rule is explicit, and defense counsel did nothing to convey a "practice" of accepting service on behalf of newly-named Defendants. Moreover, because Plaintiff purported to sue the newly named Defendants in their individual capacities, Plaintiff knew or should have known that defense counsel was not presumptively authorized to accept service on their behalf. It therefore was incumbent on Plaintiff to serve the newly named Defendants personally or, at a minimum, to seek confirmation from defense counsel about whether he had accepted service on their behalf. He failed to do either, and therefore there is no basis to hold that the magistrate judge abused his discretion in denying Plaintiffs' motion to reissue the summonses. If the magistrate judge was compelled to grant the motion to reissue the summonses in these circumstances, then it is unclear how the 120 day service rule ever could be enforced.

## VIII.
## CLAIMS AGAINST THE CITY OF TAYLOR FOR ENGAGING IN A PATTERN AND PRACTICE OF PERMITTING, CONDONING, AND FAILING TO PREVENT THE USE OF EXCESSIVE FORCE AGAINST INMATES AND THE DENIAL OF MEDICAL TREATMENT TO INMATES

A.     **Standard of Review**

The Court reviews a district court's summary judgment ruling *de novo. Parker,* 121 F.3d at 1009.

**B.      Analysis**

As discussed in Part III, Plaintiff does not have a viable claim for excessive force against Lieutenant Canning, but, as discussed in Part VI, Plaintiff should have been granted leave to amend to name Defendants Porta and Minard, both of whom allegedly inflicted beatings and other injuries on Plaintiff. Accordingly, Plaintiff has a viable excessive force claim as to these two Defendants. Plaintiff, however, does not have a viable claim of denial of medical treatment, as discussed in Part V. Accordingly, Plaintiff lacks standing to bring a claim that the City of Taylor has engaged in a pattern or practice of denying medical treatment to prisoners at the City of Taylor jail. Thus, the only question is whether the district court erred in granting summary judgment for the City of Taylor regarding Plaintiff's claim that the City has engaged in a pattern or practice of permitting or condoning the use of excessive force against prisoners.

To prove his pattern or practice claim, Plaintiff cites several other cases that his attorney's law firm has brought against the City of Taylor, as well as a newspaper article that refers to unidentified individuals who allegedly were treated poorly at the City of Taylor jail. *See* J.A. 956-58. Plaintiff refers to deposition testimony from two of these cases in which the defendants testified that they had never heard of an officer in the Taylor Police Department being disciplined for excessive force. Plaintiff also refers to deposition testimony from Officer Crapanzano, in which Crapanzano purportedly testified that she would not report a prisoner's complaint of being kicked in the head and that she was unaware of any specific policy governing the reporting of misconduct by officers.

This evidence does not create a genuine issue of material fact for trial. First, the deposition testimony from other cases against the City of Taylor shows only that certain officers are unaware of other officers having been disciplined for the use of excessive force. If anything, this evidence tends to undermine Plaintiff's claim of a pattern or practice of excessive force. Second, the newspaper article contains information about the experiences of anonymous persons, and Plaintiff submitted no other corroborating documentation that the incidents had occurred. Because the newspaper article was inadmissible hearsay and Defendants have not conceded its evidentiary reliability, it could not create a genuine issue of material fact for trial. Third, Plaintiff has misrepresented the deposition testimony of Officer Crapanzano. She did not testify that she would fail to report a prisoner complaint of being kicked in the head. A fair reading of her testimony reveals that she testified that she would report a prisoner complaint of being kicked by an officer if the prisoner indicates that he is hurt or needs medical attention. Moreover, she clarified that she would not necessarily report a kick that did not result in injury if the kick was accidental. Finally, Crapanzano's testimony that she is unaware of a specific procedure for reporting police misconduct does not, in itself, demonstrate a pattern or practice of excessive force. For these reasons, the district court properly granted summary judgment for the City of Taylor on Plaintiff's pattern or practice claim.

### IX.
### CONCLUSION

The district court erroneously granted summary judgment in favor of three supervisory police officers (Lieutenant Canning, Sergeant Tapp, and Lieutenant Zachary) on Plaintiff's claim of unlawful detention. At various times during Plaintiff's four day incarceration, all three Defendants were directly responsible for ensuring that inmates were expeditiously presented to a magistrate for arraignment, and there is a genuine issue of material fact as to whether these Defendants knew that Plaintiff was being unlawfully detained, but failed to act. The district court also erroneously granted summary judgment on Plaintiff's claim against Lieutenant Canning for his involvement in the decision to evict Plaintiff from his home following his release from the City of Taylor Jail. The

evidence suggests that Lieutenant Canning was the officer in charge of the City of Taylor Jail on that day, and there was no court order directing Plaintiff to leave his home.

The district court properly granted summary judgment in favor of the three supervisory Defendants on Plaintiff's claim that he was subjected to excessive force on two occasions. There is no evidence that any of them encouraged or directly participated in the specific instances of excessive force. The court also properly granted Defendants' motion for summary judgment on Plaintiff's claim for denial of medical treatment. There is insufficient evidence showing that Plaintiff was detained under conditions posing a substantial risk of serious harm. Finally, the court properly granted summary judgment against Plaintiff on his claim against the City of Taylor for allegedly engaging in a pattern and practice of permitting, condoning, and failing to prevent the use of excessive force against inmates and the denial of medical treatment to inmates. Plaintiff submitted no competent evidence supporting this claim.

Except with respect to proposed Defendants Bonner and Desrosiers, the district court abused its discretion in upholding the magistrate judge's denial of Plaintiff's motion for leave to amend to name certain additional defendants who participated in either Plaintiff's unlawful detention, the beating of Plaintiff, or the eviction of Plaintiff from his home. The court, however, did not abuse its discretion in upholding the magistrate judge's denial of Plaintiff's motion to re-issue summonses for Defendant Yesta, Crapanzano, Caldwell, and O'Connor because Plaintiff failed to demonstrate excusable neglect in failing to serve them with the complaint and summons within 120 days.

For all the foregoing reasons, the district court's orders of November 10, 2003 and December 2, 2003 are **AFFIRMED, in part,** and **REVERSED, in part**.