PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES R. MEEKER; DEBORAH A.
MEEKER; JAMES ROBERT MEEKER,
                 *Plaintiffs-Appellees,*

                 v.

WILLIAM HENDERSON EDMUNDSON, II,
individually and as an employee of
the Wayne County Board of
Education,
                 *Defendant-Appellant,*

                 and                                    No. 04-2301

RICHARD GENE SAULS, as an
employee of the Wayne County
Board of Education; STEVEN D.
TAYLOR, as Superintendent of the
Wayne County Schools; GEORGE E.
MOYE, JR., as Chairman of the
Wayne County Board of Education;
WAYNE COUNTY BOARD OF
EDUCATION,
                 *Defendants.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CA-03-613-BO)

Argued: May 25, 2005

Decided: July 13, 2005

Before MOTZ and GREGORY, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Senior Judge Hamilton joined.

---

**COUNSEL**

**ARGUED:** Deborah R. Stagner, THARRINGTON, SMITH, L.L.P., Raleigh, North Carolina, for Appellant. Thomas Franklin Loflin, III, LOFLIN & LOFLIN, Durham, North Carolina, for Appellees. **ON BRIEF:** Jonathan A. Blumberg, THARRINGTON, SMITH, L.L.P., Raleigh, North Carolina; Ann S. Estridge, CRANFILL, SUMNER & HARTZOG, L.L.P., Raleigh, North Carolina, for Appellant. Glenn A. Barfield, BARNES, BRASWELL & HAITHCOCK, P.A., Goldsboro, North Carolina, for Appellees.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal arises from a claim that a public high school wrestling coach violated the constitutional rights of a member of his high school wrestling team by instituting and encouraging repeated beatings of the student by other members of the team. The coach appeals the district court's refusal to dismiss the complaint on the basis of qualified immunity. We affirm.

I.

The amended complaint alleges that in the fall of 2000, James Robert Meeker, a freshman at Rosewood High School in Wayne County, North Carolina, joined the school's wrestling team, which William Henderson Edmundson II coached. According to the complaint, from November 2000 through January 2001, Coach Edmundson frequently "initiated and encouraged" abuse of Meeker by other members of the wrestling team.

During these attacks, at least two team members restrained Meeker, who was only five feet, five inches tall and weighed 115 pounds,

while additional teammates would pull up or remove his clothing and take turns "repeatedly beating [his] bare torso" until it turned red. Meeker received such beatings, referred to as "red bellies," at least twenty-five times during the few months he was a member of the team. Coach Edmundson allegedly "instituted, permitted, endorsed, encouraged, facilitated, and condoned" the abuse, using other students as his "instruments" to beat Meeker.

The complaint alleges that Coach Edmundson employed the beatings as "his sole means of discipline" and as a way to force an unwanted member to quit the team, which had a purported no-cut policy. Edmundson assertedly told Meeker that the beatings would continue until Meeker "toughened up and stopped crying," and the coach prevented disclosure of the abuse by "intimidation and retaliation, including more . . . severe beatings." The beatings caused Meeker "excruciating physical pain, inflammation of the body, and severe emotional anguish and humiliation," requiring him to seek professional care and medical treatment for "among other conditions, traumatic stress disorders," which "may be permanent in nature." In January 2001, suffering from traumatic stress and reacting to the most recent beatings, Meeker brought a "multi-tool" to school, which led to his suspension and reassignment to another school in the district.

In August 2003, Meeker's parents, individually and as guardians *ad litem* for Meeker, filed this action for compensatory and punitive damages against Coach Edmundson, Principal Richard Gene Sauls, and Superintendent Steven D. Taylor, in their official and individual capacities; Chairman of the Wayne County Board of Education, George E. Moye, Jr., in his official capacity; and the Wayne County Board of Education. In addition to claiming that the defendants acted negligently in violation of state law, the amended complaint alleges violation of Meeker's and his parents' constitutional rights under 42 U.S.C. §§ 1983 and 1988 (2000) and civil rights conspiracy in violation of 42 U.S.C. §§ 1983 and 1985 (2000).

The defendants moved to dismiss the complaint in its entirety. Although refusing to dismiss the state law claims, the district court did dismiss all the § 1985 conspiracy claims, as well as the § 1983 claims against all defendants except Edmundson in his individual capacity. The court found the complaint alleged facts stating a claim

that Edmundson violated Meeker's constitutional rights because "a state actor, through his agents, cannot randomly beat a student." Moreover, the district court refused to dismiss this claim against Coach Edmundson on the basis of qualified immunity, reasoning that "at the time of the alleged incidents, it was clearly established that a state actor could not arbitrarily commit violence against a student."

Edmundson appeals from the district court's refusal to grant him qualified immunity.[1]

## II.

In an appeal from the denial of qualified immunity, we first determine whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury," show that the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If not, "the analysis ends; the plaintiff cannot prevail." *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002). If, however, a plaintiff has alleged the violation of a constitutional right, we then "ask whether the right was clearly established" at the time of the asserted violation. *Saucier*, 533 U.S. at 201; *Clem*, 284 F.3d at 549. "If the right was not clearly established in the specific context of the case," then the official is entitled to immunity from suit. *Clem*, 284 F.3d at 549 (internal quotation marks and citation omitted). Only if a plaintiff alleges the violation of a clearly established constitutional right does his complaint survive a motion to dismiss on qualified immunity grounds.

## A.

Our first task, then, is to resolve whether, "[t]aken in the light most favorable" to Meeker, "the facts alleged show" that Coach Edmundson's conduct "violated a constitutional right." *Saucier*, 533 U.S. at 201. Meeker maintains that the facts show that Edmundson violated his substantive due process right to be free from the infliction of malicious corporal punishment by school officials.

---

[1]During the pendency of the case in the district court, Meeker attained majority and was substituted as a party.

Twenty-five years ago in *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980), we considered whether a student could state a substantive due process claim by alleging malicious corporal punishment inflicted by school officials. There, a public school student and her parents asserted, in "admittedly . . . conclusory allegations," that, after a teacher had paddled the student without provocation, the school principal "supervis[ed] and approv[ed]" an additional paddling, which caused the student serious injury. *Id.* at 614. We found that the complaint set forth a substantive due process claim against both the teacher and the principal.

In doing so, we relied on the fact that three years earlier, in *Ingraham v. Wright*, 430 U.S. 651, 672 (1977), the Supreme Court had expressly recognized that "corporal punishment in public schools implicates a constitutionally protected liberty interest . . . to be free from . . . unjustified intrusions on personal security." The *Ingraham* Court said such punishment did not infringe a student's Eighth Amendment or *procedural* due process rights, but it specifically left open the possibility that corporal punishment at a public school could give rise to a substantive due process claim. *See id.* at 679 n.47. In *Hall* we concluded that "the Court's express reservation of the issue" in *Ingraham* "compelled" the conclusion "that substantive due process rights might be implicated in school disciplinary punishments even though procedural due process is afforded by adequate civil and criminal state remedies." *Hall*, 621 F.2d at 611 (emphasis omitted).

We then held that the proper "substantive due process inquiry" focuses on the force imposed by school authorities: whether the force was "disproportionate to the need presented," whether the force was "inspired by malice or sadism rather than a merely careless or unwise excess of zeal," and whether the force inflicted "severe" injury. *Id.* at 613 (citation omitted). If consideration of these factors leads to the conclusion that the force imposed "amounted to a brutal and inhumane abuse of official power literally shocking to the conscience," *id.*, then the plaintiff has made out a substantive due process claim. Applying this test in *Hall*, we concluded that the district court erred in dismissing the student's substantive due process claim against the teacher who had paddled her and the principal who had authorized the paddling. *Id.* at 614-15; *see also P.B. v. Koch*, 96 F.3d 1298, 1302

(9th Cir. 1996) (collecting cases from several circuits that have adopted *Hall*'s rationale and holding).

Meeker's complaint clearly alleges facts sufficient to state a substantive due process claim under the criteria set forth in *Hall*. The complaint alleges facts asserting a use of force — brutal, unprovoked beatings — "disproportionate to [any] need." *Hall*, 621 F.2d at 613. The complaint further alleges that Edmundson deliberately and intentionally instituted these unprovoked beatings on numerous occasions; a fact-finder certainly could determine that such beatings were "inspired by malice." *Id.* Finally, Meeker's allegations that Coach Edmundson repeatedly directed the unprovoked and malicious beatings, causing him to suffer "excruciating physical pain, inflammation of the body," and "traumatic stress disorders" which "may be permanent in nature," are adequate to allege the requisite injury to support a substantive due process claim. *See, e.g.*, *P.B.*, 96 F.3d at 1304 (holding that "pain, bruising, and emotional injury" provide the basis for a substantive due process claim when a school official acts maliciously and without any disciplinary purpose); *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987) (holding that when "a trier of fact could find" a school official's "need to strike a student was "minimal or nonexistent" it could conclude that the "blows inflicted were a brutal and inhumane abuse of . . . official power literally shocking to the conscience"); *cf. Kirkland v. Greene County Bd. of Ed.*, 347 F.3d 903, 904-5 (11th Cir. 2003) (holding allegations that a principal repeatedly struck a thirteen-year-old student, causing a large knot on the student's head and continuing migraine headaches, provide an adequate basis for a substantive due process claim.)[2]

Indeed, Edmundson does not seriously contend to the contrary.

---

[2]In *Hall* itself we noted that "it is clear that the rights to bodily security protected by the Eighth Amendment and by substantive due process respectively are substantially congruent as far as content is concerned." *Id.* at 611 n.5. The "unnecessary and wanton infliction of pain" *alone* suffices to form an injury severe enough to be cognizable under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted); *Norman v. Taylor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc) (recognizing that "pain itself" may constitute the requisite injury for Eighth Amendment purposes).

Instead he insists that Meeker's complaint fails to state a constitutional claim because Edmundson had no "constitutional duty to protect Bob [Meeker] from harm by third parties." Brief of Appellant at 15. This argument is grounded in inapposite cases, a seemingly deliberate misunderstanding of Meeker's complaint, and a repeated misreading of *Hall*.

Edmundson relies on *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and its progeny, particularly *Reeves v. Besonen*, 754 F. Supp. 1135 (E.D. Mich. 1991). In *DeShaney*, a child whose beatings by his father resulted in severe brain damage brought a § 1983 action against the department of social services, asserting that it had violated his constitutional right to substantive due process "by failing to intervene to protect him against a risk of violence at his father's hands of which [it] knew or should have known." *DeShaney*, 489 U.S at 193. The Supreme Court rejected this contention, holding that the Due Process Clause does not "generally confer [an] affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196. Drawing on *DeShaney*, a federal district court in Michigan held in *Reeves* that a high school football player had no substantive due process right to have his coach *protect* him from a ritual hazing at the hands of his teammates. *Reeves*, 754 F. Supp. at 1140.

But, contrary to Edmundson's contentions, and unlike the plaintiffs in *DeShaney* and *Reeves*, Meeker does not allege that a state actor — here Coach Edmundson — merely failed to come to his defense or protect him from harm inflicted by others. Rather, Meeker's complaint asserts that Coach Edmundson used students as his "*instruments*" to abuse Meeker. The complaint states that Edmundson "initiated and encouraged the student wrestlers to seize and beat" Meeker; that he "instituted, permitted, endorsed, encouraged, facilitated, and condoned" the beatings of Meeker; that he warned Meeker that the beatings would continue until he "toughened up"; and that, on at least one occasion, he even informed Meeker in advance that he would be beaten by team members. As the district court recognized, the complaint charges that Coach Edmundson "actively employed" the wrestlers to "beat [Meeker] repeatedly," not that "Edmundson merely remained passive while private actors assaulted . . . Meeker."

Thus, *DeShaney* and its progeny, including *Reeves*, provide no relief for Edmundson.

Moreover, it is crystal clear that *if* Meeker can prove, as he alleges, that Coach Edmundson "instituted, permitted, endorsed, encouraged, [and] facilitated" the beatings, Edmundson cannot escape liability simply because he did not *administer* the beatings with his own hands. For, again contrary to Edmundson's contentions, *Hall* itself holds to the contrary. In *Hall*, we did not, as Edmundson repeatedly asserts, hold that a student could make out a substantive due process claim only against school personnel who *directly inflicted* corporal punishment. *See* Brief of Appellant at 29, 31; Reply Brief at 6. Rather, we held that the plaintiff had stated a substantive due process claim against both the teacher who administered the paddlings *and* the principal who "authorized" one of the beatings.[3] *Hall*, 621 F.2d at 609, 614-15. *Hall* thus teaches that even allegations that a school official "authorized" (rather than instituted or encouraged) malicious corporal punishment suffice to state a claim against that official for a constitutional violation.

---

[3] *Hall* also disposes of a secondary argument asserted by Edmundson — that the district court erred in "attribut[ing]" the students' assaults to Edmundson absent allegations sufficient to support a conspiracy between Edmundson and the students. Brief of Appellant at 23. A conspiracy allegation is no more necessary here than it was in *Hall*. Just as we held in *Hall* that the complaint stated a substantive due process claim against the principal who authorized one of the paddlings, because Edmundson assertedly authorized — indeed instituted — the beatings, the complaint states a substantive due process claim against him. Thus, unlike the cases relied on by Edmundson, *e.g.*, *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000), this is not a situation in which the alleged constitutional violation depends on imputing liability to a state actor for the actions of private party co-conspirators. Rather, Edmundson, indisputably a state actor, is liable for his own conduct, i.e., authorizing the beatings. *See, e.g.*, *Sales v. Grant*, 158 F.3d 768, 776 (4th Cir. 1998) (noting that both direct personal participation and "conduct that is the effective cause of another's direct infliction of the constitutional injury" can establish liability for a constitutional violation); *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993) ("[A] state actor may be subject to liability for an action physically undertaken by private actors in violation of the plaintiff's liberty or property rights if the state actor directed or aided and abetted the violation.").

In sum, we conclude that in his complaint Meeker has alleged facts setting forth a substantive due process claim against Edmundson. Of course, as we cautioned in *Hall*, "upon full development of a summary judgment or trial record, it may appear that the actual facts of the incident do not support a claim of substantive due process violation." *Hall*, 621 F.2d at 614. But at this juncture, the facts alleged set forth a violation of a constitutional right.

B.

Having concluded that Meeker has alleged the violation of a constitutional right, we turn to the second step of the *Saucier* qualified immunity analysis to determine whether Coach Edmundson is nonetheless entitled to immunity from suit. That is, we must ascertain "whether a reasonable [official] could have believed [the challenged conduct] to be lawful, in light of clearly established law" at the time of the beatings. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The law is clearly established for qualified immunity purposes not only when "the very action in question has previously been held unlawful," but also when "pre-existing law" makes the "unlawfulness" of the act "apparent." *Id.* at 640. And so, here we ask whether in November 2000 a reasonable educator could have believed that repeatedly instituting the unprovoked and painful beatings of one of his students was lawful, in light of clearly established law.

By November 2000, the law provided clear guidance: No school official could, consistent with constitutional principles, cause a student to be subjected to such beatings. As the district court recognized, "the Fourteenth Amendment liberty interest in bodily integrity has been recognized since at least 1977" with the issuance of *Ingraham*, 430 U.S. at 673, and "[i]n the Fourth Circuit, educators have been aware that arbitrary use of corporal punishment . . . [has been] prohibited by the Fourteenth Amendment since at least" the issuance of *Hall* in 1980.[4] Not only has such conduct been unlawful in this circuit

---

[4]Furthermore, five years before the beatings at issue here, in *Sandin v. Conner*, the Supreme Court itself characterized *Ingraham*, as we had in *Hall*, as "address[ing] the rights of schoolchildren to remain free from arbitrary corporal punishment." 515 U.S. 472, 485 (1995). *Sandin*

since our decision in *Hall*, but by November 2000, the Third, Sixth, Eighth, Ninth, and Tenth Circuits had adopted the *Hall* rationale and holding. *See P.B.*, 96 F.3d at 1302-03; *Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 564 (8th Cir. 1988); *Metzger v. Osback*, 841 F.2d 518, 520 (3d Cir. 1988); *Webb*, 828 F.2d at 1158; *Garcia v. Miera*, 817 F.2d 650, 653 (10th Cir. 1987).

When we issued *Hall*, only one circuit — the Fifth — had held to the contrary, and in *Hall* we expressly rejected its view. *See Hall*, 621 F.2d at 612. In considering *Ingraham* prior to Supreme Court review of that case, the Fifth Circuit held that disciplinary corporal punishment by educators does not violate substantive due process. *See Ingraham v. Wright*, 525 F.2d 909, 916-17 (5th Cir. 1976) (en banc), *aff'd on other grounds*, 430 U.S. 651 (1977).[5] However, no other circuit has followed the Fifth. Indeed, several of our sister circuits have explicitly rejected the Fifth Circuit's analysis, as we did in *Hall*. *See, e.g.*, *P.B.*, 96 F.3d at 1302 n.3 (noting that "[no] other court has adopted th[e] reasoning" of the Fifth Circuit); *Garcia*, 817 F.2d at 658 (finding that "[d]espite the Fifth Circuit's position . . . the law was clearly established" by *1982* "that some high level of force in a corporal punishment context would violate a child's substantive due process rights").

Coach Edmundson does *not* maintain that *Hall* is *not* good law or that it is less than controlling in this circuit. Rather, Edmundson seems to suggest that *Hall* does not apply because the beatings could not be motivated by malice in that they did not constitute traditional

---

explained that in *Ingraham* the Court had "noted that the Due Process Clause historically encompassed the notion that the State could not 'physically punish an individual except in accordance with due process of law' and so *found schoolchildren sheltered*." *Id.* (emphasis added) (quoting *Ingraham*, 430 U.S. at 674).

[5]It is unclear whether this holding is still good law even in the Fifth Circuit, particularly in circumstances, like those at issue here, involving allegations of arbitrary violence inflicted for *no* disciplinary purpose. *Compare Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990), *with Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-51, 455 (5th Cir. 1994), *and Jefferson v. Yselta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987).

corporal punishment administered pursuant to formalized procedures. However, the fact that the beatings were not administered pursuant to an established procedure, but instead arbitrarily ordered for no legitimate disciplinary purpose, makes it more, not less, likely that they constitute a malicious abuse of power violative of the Due Process Clause.

Indeed, for this very reason, even the Eleventh Circuit, which is bound by the old Fifth Circuit's holding in *Ingraham*, had held prior to November 2000 that the Fifth Circuit's *Ingraham* decision does not "control" claims of corporal punishment administered arbitrarily, unrestricted by established procedures, like the one at issue here. *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1073 (11th Cir. 2000). Thus, even in a jurisdiction in which allegations of corporal punishment pursuant to established disciplinary codes may not be cognizable as substantive due process violations, *see supra* n.5, claims alleging arbitrary violence are. *Id.*; *see also P.B.*, 96 F.3d at 1304 (holding that when there is no disciplinary need to use force against a student, "one can reasonably infer" that the violent actions were taken "not in good faith but for the purpose of causing harm"); *Webb*, 828 F.2d at 1159 (holding that lack of evidence that the blows were disciplinary raised the possibility that the "need to strike . . . was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of . . . official power, literally shocking to the conscience").

Thus, the district court correctly concluded that Edmundson is not entitled to qualified immunity from Meeker's substantive due process claim.[6]

---

[6]Meeker also alleges that Edmundson's conduct violated Meeker's Fourth Amendment "right to be free from unreasonable seizures and excessive force." He summarily repeats that contention twice in his appellate brief. *See* Brief of Appellee at 11, 13. To bring an argument before an appellate court, however, the Federal Rules of Appellate Procedure require a party to offer a written "argument . . . contain[ing] [its] contentions *and the reasons for them, with citations to the authorities . . .* on which the [party] relies." Fed. R. App. P. 28(a)(9) & (b) (emphasis added). Meeker's brief cites no cases supporting the Fourth Amendment right he asserts. Accordingly, we deem this claim abandoned. *See 11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (en banc).

### III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.