RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0236p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ERIC DRAW; RODNEY RICKS,

      *Plaintiffs-Appellants,*

    *v.*

CITY OF LINCOLN PARK,

      *Defendant,*

WILLIAM KISH, III; JOSEPH LAVIS; DOUGLAS
MUNCEY; MOHAMED NASSER,

      *Defendants-Appellees.*

No. 06-1959

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-73940—Victoria A. Roberts, District Judge.

Argued: April 18, 2007

Decided and Filed: June 21, 2007

Before: ROGERS and COOK, Circuit Judges; GWIN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Joseph Dedvukaj, THE JOSEPH DEDVUKAJ FIRM, Southfield, Michigan, for Appellants. Rosalind Rochkind, GARAN LUCOW MILLER, P.C., Detroit, Michigan, for Appellees. **ON BRIEF:** Joseph Dedvukaj, THE JOSEPH DEDVUKAJ FIRM, Southfield, Michigan, for Appellants. Rosalind Rochkind, John J. Gillooly, GARAN LUCOW MILLER, P.C., Detroit, Michigan, for Appellees.

---

## OPINION

---

GWIN, District Judge. In this civil rights action, Plaintiffs Eric Draw ("Draw") and Rodney Ricks ("Ricks") sued the Defendants, the City of Lincoln Park and four city police officers, William Kish, III, Joseph Lavis, Douglas Muncey, and Mohamed Nasser, based upon the named officers'

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

conduct at the scene of an illegal drag race. In their suit, the Plaintiffs alleged that both the City of Lincoln Park and the four officers violated their substantive due process rights pursuant to 42 U.S.C. § 1983.

Multiple civil law suits arose out of the illegal drag race at issue in this case, including a federal cause of action brought by Dorothy Jones, suing on behalf of Denise Michelle Jones, who was killed when one of the drag race drivers lost control of his vehicle and crashed into a crowd of spectators. *Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006). This Court's decision in *Jones*, denying the decedent's claims, does not preclude the instant Plaintiffs from asserting their claims because the doctrine of res judicata is not applicable. *Young v. Township of Green Oak*, 471 F.3d 674 (6th Cir. 2006) ("The doctrine of res judicata bars a successive action in Michigan if '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'") However, a central issue of the current case is whether the rules of law announced in *Jones* control the outcome of the Plaintiffs' constitutional claims.

The district court ultimately found in favor of the Defendants and granted their motion for summary judgment. In reaching this decision the district court found that the Plaintiffs' claims were indistinguishable from those presented to – and rejected by – the district court in *Jones*. Specifically, the court held that, as in *Jones*, the Plaintiffs had failed to allege facts sufficient to proceed on a "state created danger" theory of liability because the acts of the Defendant Officers neither (1) amounted to an affirmative act, nor (2) created a specific risk to the Plaintiffs.

With this appeal, Plaintiffs-Appellants seek reversal of the district court's decision, arguing that the district court erred in failing to address the Plaintiffs' direct-injury theory of liability in addition to applying the "state created danger" doctrine to the Plaintiffs' claims. Additionally, the Plaintiffs-Appellants argue that even if the "state created danger" doctrine applies, the *Jones* Court's application of the doctrine was in error and should be overruled. For the reasons that follow, we **AFFIRM** the decision of the district court.

## I. Background

On the morning of October 8, 2001, the driver of a car engaged in a drag race, Aaron Reynolds, lost control of his vehicle and struck and injured the Plaintiffs-Appellants, Eric Draw and Rodney Ricks. As is discussed in *Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006), Reynolds also hit and killed Denise Michelle Jones. Defendants-Appellees William Kish III, Joseph Lavis, Douglas Muncey, and Mohamed Nasser – all Lincoln Park police officers – were present both before and after the race commenced.

The officers claim that they arrived at the scene five to ten minutes before the race. However, evidence in the record alleges that the Defendant officers arrived at the scene of the drag race more than an hour before the race started. Mr. Reynolds, who ultimately caused the injuries described above, stated that he intended to abandon the race when the police arrived but proceeded with the race when Officer Nasser told Mustapha Atat, the other drag racer, that they could "go ahead and race." Several individuals saw Officer Nasser approach the drag racers and speak briefly with Mustapha Atat before returning to his police car. Additionally, at least one spectator claims to have seen Officer Nasser place a bet on the race after speaking with Atat.

After the officers returned to their two police vehicles in the parking lot on the Lincoln Park side of the street, several bystanders heard one of the officers announce over his car's public address system that "[w]e are not [here] to arrest anyone, go ahead with the race." The officers then played rap music over their vehicle's public address system, although the parties dispute the length of time that the defendants played that music. At the time that the race commenced, spectators estimated

that the crowd ranged in size from 150-300 people and noted that the race participants and spectators completely blocked the intersection of Fort Street and Outer Drive, which is in Detroit, preventing traffic into and out of Lincoln Park.

Despite their undisputed presence at the drag race prior to its commencement at approximately 1:45 a.m., there is no evidence in the record that the Defendant officers attempted to stop the race or notify the Lincoln Park police dispatcher regarding what was occurring, as department procedure required. Ultimately, Mr. Reynolds lost control of his car shortly after the race began and veered into the crowd, resulting in the injuries to the Plaintiffs as well as the death of Denise Jones. After the accident, the officers contacted their dispatcher, who contacted Detroit police. Once the Detroit police arrived, the Lincoln Park police left without giving statements. The Lincoln Park Police Department learned that its officers had been at the scene of the accident only through subsequent media coverage.

The accident prompted several criminal and civil actions. Reynolds pleaded guilty to involuntary manslaughter, failure to stop at the scene of an accident resulting in death, two counts of felonious driving, and drag racing. Atat faced similar charges but fled the country before the state could prosecute him. Officers Nasser, Muncey, and Lavis pleaded no contest to criminal charges of neglect of duty. Additionally, Dorothy Jones, suing on behalf of the decedent, Denise Michelle Jones, brought both state and federal causes of action against the drivers, the City of Lincoln Park, and the  officers present at the drag race.

On March 28, 2003, the Michigan circuit court granted a $25 million default judgment to Jones as against the drivers. However, both the state and federal courts granted summary judgment against Jones with respect to her claims against the officers and the City of Lincoln Park. *See Jones v. Reynolds*, No. 250616, slip op. at *6 (Mich.Cir.Ct. Apr. 7, 2005); *see also Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006). In rejecting Jones' § 1983 action, the district court held that Jones' claims against the four Lincoln Park police officers failed under a "state created danger" theory of liability because Jones "offered no evidence that they [the officers] knew or had reason to know that the decedent specifically was in any more danger than any other citizen in the area that evening." The Sixth Circuit affirmed the district court's grant of summary judgment. *See Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006).

On October 7, 2004, Plaintiffs-Appellants Draw and Ricks commenced the instant litigation in the United States District Court for the Eastern District of Michigan, alleging that both the City of Lincoln Park and all four officers violated their substantive due process rights pursuant to 42 U.S.C. § 1983. On the same date the Plaintiffs-Appellants also filed suit in Wayne Country Circuit Court, seeking relief under Michigan law. On July 5, 2006, the district court granted Defendants' motion for summary judgment, holding that the Plaintiffs' claims were indistinguishable from those rejected in *Jones v. Reynolds*. With this appeal, Plaintiffs-Appellants seek reversal of the district court's decision.

## II.  Legal Standard

We review a district court's order granting summary judgment de novo. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner*, 412 F.3d at 637. When deciding a motion for summary judgment, the court

must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushito Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo*, 434 F.3d at 464; *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

## III.  Analysis

In this case, we decide whether the Plaintiffs-Appellants' claim is distinguishable from that presented and rejected by this Court in *Jones v. Reynolds*.  In *Jones* we reasoned that, absent special circumstances, nothing in the language of the Due Process Clause requires a state to protect the life, liberty, and property of its citizens against invasion by private actors. 438 F.3d at 690 (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).  States only absorb a duty to protect citizens when "the State has so restrained the liberty of the individual that it renders him unable to care for himself" or when the State "cause[s] or greatly increase[s] the risk of harm to its citizens . . . through its own affirmative acts."  *Id.* (citing *DeShaney,* 489 U.S. at 200).

The Plaintiffs-Appellants say that *Jones* does not control because they base their § 1983 claim on a "direct-injury" theory of liability as opposed to the "state created danger" claim relied upon by the Plaintiff in *Jones*.  Accordingly, the Plaintiffs-Appellants argue that the district court erred in granting the Defendants-Appellees' motion for summary judgment based upon our decision in *Jones*.  Additionally, even if the "state created danger" doctrine is the correct legal standard for analyzing their § 1983 claim, the Plaintiffs-Appellants say that the *Jones* Court's application of the doctrine was in error and that the Court should therefore not apply that holding to the instant case.

The Defendants-Appellees disagree that the instant case is in any way distinguishable from *Jones* and argue that the Plaintiffs-Appellants' claim fails irrespective of how they attempt to characterize their theory of liability.  Additionally, the Defendants-Appellees say that they are entitled to judgment as a matter of law because (1) the defendant officers are entitled to qualified immunity; and (2) the doctrine of res judicata applies based upon the state court's merits adjudication of the Plaintiffs-Appellants' state law claims.  We address each argument below.

## A.  Theory of Liability

As an initial matter, we first consider whether the instant case is distinguishable from our decision in *Jones* because the Plaintiffs-Appellants' claim here is predicated on a different theory of liability.  As noted above, the Plaintiffs-Appellants say that the district court erred in failing to evaluate their § 1983 claim under a "direct injury" theory of liability rather than according to the "state created danger" doctrine.  Unsurprisingly, Defendants-Appellees say that the Plaintiffs-Appellants' claim is unsustainable under a "direct injury" theory of liability and argue that the district court applied the proper standard in evaluating the Plaintiffs-Appellants' claim.  Ultimately, the Court finds that the Plaintiffs-Appellants' claim fails irrespective of how the Court characterizes their theory of liability.

### 1.     *Direct Injury Theory of Liability*

"Section 1983 provides a federal cause of action for civil damages against an individual acting under color of state law who deprives another of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Jones*, 438 F.3d at 689 (internal citation omitted).  Here, Plaintiffs-Appellants say that the Defendants-Appellees deprived them of their substantive due process rights guaranteed by the Fourteenth Amendment through their conduct leading up to an illegal drag race. In characterizing their claim as one of "direct-injury," Plaintiffs-Appellants say that the pertinent inquiry is not whether the defendant officers' failure to act was constitutionally infirm.  Rather, they

argue that the Defendants-Appellees directly injured the Plaintiffs-Appellants through "grossly negligent" or "reckless" conduct that "shock[s] the conscience," which the Supreme Court has held constitutes a constitutional violation. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

The Court agrees that the Plaintiffs-Appellants' claim does not constitute a typical "failure to act" case. However, neither does the record support a direct injury claim. In *Lewis*, the Supreme Court held that police conduct may violate the Fourteenth Amendment's guarantee of substantive due process. *Lewis*, 523 U.S. at 836. To find such a constitutional injury, however, the Court held that a Plaintiff must show that the police possessed a purpose to cause harm, such that their actions were sufficiently arbitrary and reckless that they shock the conscience. *Id.* The police conduct alleged in the instant case, although reprehensible, does not lend itself to such a claim.

Here, the defendant officers' conduct was irresponsible. However, no evidence in the record indicates the officers intended to cause any harm through their actions or otherwise acted in a manner sufficient to transform wrongful behavior into unconstitutional conduct. The Plaintiffs-Appellants attempt to circumvent this failing by arguing that the defendant officers "aided and abetted the commission of crimes i.e., drag racing and gambling, which resulted in the injuries to Appellants." Stated otherwise, the Plaintiffs-Appellants argue that the defendant officers and the drag racers themselves engaged in a conspiracy to engage in unconstitutional conduct. The Court finds this argument unavailing for a number of reasons.

First, in the conspiracy cases cited by the Plaintiffs-Appellants, such as *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) and *Meeker v. Edmundson*, 415 F.3d 317 (4th Cir. 2005), the state officials at issue actively solicited or encouraged conduct by third parties that – if engaged in by a state actor – was inherently unconstitutional. For example, in *Dwares,* police officers indirectly precluded demonstrators from exercising their First Amendment rights by encouraging "skin heads" to assault individuals who were burning a flag. *Dwares*, 985 F.2d at 96. Similarly, in *Meeker* a government official solicited others to savagely engage in constitutionally impermissible corporal punishment of students. *Meeker*, 415 F.3d at 332. Here, even if the Court construes the defendant officers' conduct as conspiratorial, there is no evidence that the goal of the purported conspiracy – the facilitation of an illegal drag race – was in and of itself unconstitutional. Although violative of Michigan law, drag racing does not implicate constitutional concerns.

Second, the Plaintiffs-Appellants' direct-injury argument ignores the fact that otherwise impermissible police conduct must truly be extraordinary in nature to qualify as "conscience shocking." "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." 523 U.S. at 848. Rather, the "constitutional concept of conscience shocking . . . points clearly toward . . . [liability], only at the ends of the tort law's spectrum of culpability." *Id.* Here, the defendant officers stupidly encouraged third parties to engage in tortious conduct. Without question, such conduct showed incredibly poor judgment. However, the conduct in question does not meet the high threshold set out in *Lewis*. Accordingly, we find that the Plaintiffs-Appellants' claims are unsupportable under a direct-injury theory of liability.

### 2. *State Created Danger Theory of Liability*

Even if the "state created danger" doctrine is the correct legal standard for analyzing their § 1983 claim, the Plaintiffs-Appellants say that the *Jones* Court's application of the doctrine was in error and should not control in the instant case. Specifically, the Plaintiffs-Appellants say that the Court should either overrule the *Jones* Court's application of the state created danger doctrine or request en banc review to resolve what they see as a conflict between this Court's decision in *Jones* and conflicting Supreme Court and Sister Circuit precedent. Defendants-Appellees, in contrast,

argue that no basis exists for the Court to either overturn its decision in *Jones* or request en banc review of the instant case.

In the Sixth Circuit, prior published decisions are controlling unless inconsistent with a decision of the United States Supreme Court or the Sixth Circuit sitting en banc. *Schoenberger v. Russel*, 290 F.3d 831, 841 (6th Cir. 2002) ("...one panel of this Court cannot overturn a decision of another panel; only the Court sitting en banc may do so."). Because no such inconsistency exists in this case, the Court agrees with the Defendants-Appellees that the *Jones* Court's application of the state created danger doctrine is controlling.

## B. Qualified Immunity and Res Judicata

In addition to arguing that the instant case is indistinguishable from *Jones,* the Defendants-Appellees say that they are entitled to judgment as a matter of law because (1) the defendant officers are entitled to qualified immunity; and (2) the doctrine of res judicata applies based upon the state court's merits adjudication of the Plaintiffs-Appellants' state law claims.

With respect to qualified immunity, we must first determine whether the plaintiff has shown a violation of a constitutionally protected right. *Hills v. Kentucky*, 457 F.3d 583, 587-88 (6th Cir. 2006). Only if a constitutional violation has occurred should a reviewing court proceed to determine whether the constitutional right in question was so clearly established at the time of the alleged violation that a reasonable public official acting in the defendant's position would have known that he or she was violating that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Wilson v. Layne*, 526 U.S. 603, 609 (1999).; *Cherrington v. Skeeter*, 344 F.3d 148 631, 636 (6th Cir. 2003); *accord Reynolds v. City of Anchorage*, 379 F.3d 358, 361 (6th Cir. 2004). Here, the Court's previous decision in *Jones* compels us to find that the defendant officers did not commit a constitutional violation. Accordingly, further inquiries concerning qualified immunity are inappropriate in the instant case. *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Similar logic militates against the Court addressing the merits of the Defendants-Appellees' res judicata argument. Stated succinctly, Defendants-Appellees say that the doctrine of res judicata bars the Plaintiffs-Appellants' federal claim because their state court action – which could have included Plaintiffs-Appellants federal claim – was decided on the merits prior to the district court's resolution of the instant case. However, the district court declined to address this argument after finding that the Plaintiffs-Appellants had failed to establish a constitutional violation. Because we affirm the district court's determination that the defendant officers did not commit a constitutional violation, the Court finds it unnecessary to address the merits of the Defendants-Appellees res judicata argument.

## IV. Conclusion

For the foregoing reasons, this Court **AFFIRMS** the decision of the district court.